**MONSANTO COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**Nissan Chemical Industries, Ltd., et al., Intervenors.**

**Court No. 87–05–00641.**

United States Court of International Trade.

Oct. 14, 1988.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, and David Scott Nance, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch (Platte B. Moring, III), Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Graham & James, Yasuhiro Hagihera, Dennis H. Oyakawa, Los Angeles, Cal., Lawrence R. Walders Washington, D.C., and Joon Y. Kim, Los Angeles, Cal., for defendant-intervenor Nissan Chemical Industries, Ltd.

Weil, Gotshal & Manges, A. Paul Victor and Douglas A. Nave, New York City, for defendant-intervenors Shikoku Chemical Corp. and Mitsubishi Corp.

## OPINION

RESTANI, Judge:

This matter is before the court on plaintiff's motion for judgment upon the administrative record pursuant to Rule 56.1 of the Rules of this Court. In this action, plaintiff challenges the Department of Commerce, International Trade Administration's (ITA) final results in the second administrative review of antidumping orders covering imports of cyanuric acid and its chlorinated derivatives (CA & CD) from Japan. *Cyanuric Acid and its Chlorinated Derivatives from Japan Used in the Swimming Pool Trade*, 52 Fed.Reg. 15,970 (May 1, 1987).[1]

---

1. On May 7, 1987, ITA published a notice correcting a relatively minor error in the text of

The challenged administrative review covers two Japanese manufacturers of CA & CD exported to the United States and the period April 1, 1984 through March 31, 1985. ITA found weighted average dumping margins of zero percent for one manufacturer, Nissan Chemical Industries, Ltd., on the two subject products it exported to the United States—dichloro isocyanurates and trichloro isocyanuric acid. For the second manufacturer, Shikoku Chemicals Corporation, ITA arrived at margins of 0.18 percent for imports of cyanuric acid,[2] and zero percent for dichloro isocyanurates and trichloro isocyanuric acid. 52 Fed.Reg. at 15,971. The court recently has affirmed the results of the first administrative review. *Monsanto Co. v. United States,* 12 CIT ——, 698 F.Supp. 275 (1988) (*Monsanto I*).

■ As in *Monsanto I,* plaintiff raises a variety of arguments based on ITA's decision to calculate foreign market value based on sales of all granular CA & CD in the home market, although the class of merchandise on which duties are to be imposed is limited to CA & CD used in the swimming pool trade. The court finds its previous views, as expressed in *Monsanto I,* of plaintiff's arguments regarding identical merchandise, sales outside the ordinary course of trade and fictitious markets applicable here. As in *Monsanto I,* the court finds no basis for a circumstances of sale adjustment merely because of a price difference between swimming pool and non-swimming pool merchandise in the home market.

■ In this case, plaintiff also argued to ITA that packaging is a restriction within the meaning of 19 U.S.C. § 1677(14) (1982) and that therefore an adjustment to compensate for the restriction is warranted in calculating foreign market value.[3] Section 1677(14) provides that where restrictions are found to affect the market value of the merchandise, adjustments shall be made in

this final determination. 52 Fed.Reg. 17,366.

**2.** Since the margin for Shikoku's cyanuric acid is less than 0.5 percent, and therefore *de minimis* for cash deposit purposes, ITA required no cash deposits of estimated antidumping duties.

calculating the price at which the merchandise is sold or offered for sale. As the court noted in *Monsanto I,* both the wording of the statute and its legislative history indicate that this provision is directed toward restrictions comprised of external conditions placed upon the use or disposition of merchandise by sellers that are accepted by the buyers, such as restrictions on resale. *See Monsanto I* at 280 (citing S.Rep. No. 1619, 85th Cong., 2d Sess., reprinted in 1958 U.S.Code Cong. & Admin. News at 3498, 3500–03). Plaintiff has made no showing that the packaging here falls within the purview of section 1677(14). Furthermore, plaintiff has pointed to no evidence of record that particular types of packaging have any effect on the value of merchandise in the home market. Buyers may choose whatever form of the product or whatever package suits them, and packaging is not likely to be a restriction on knowledgeable institutional uses, as generally are involved here. ITA's determination that the sales were unrestricted is, therefore, based on substantial evidence and in accordance with law.

■ As to defendant-intervenor Shikoku Chemicals Corporation, the court adheres to its earlier views on the appropriateness of a circumstances of sale adjustment for advertising expenses. As the adjustment was given for advertising aimed at non-direct purchasers and ITA's allocation method is appropriate, ITA did not err in granting the adjustment. *See Monsanto I* at 284. Plaintiff correctly notes that ITA did not review the referenced advertisements in this review as it did in the earlier review. There is no newly presented factual reason for verification in this review. Plaintiff argues, however, that ITA had no discretion to refrain from conducting a verification of certain information relied on.

**3.** Although this issue was discussed in *Monsanto I,* plaintiff had not articulated this particular argument clearly at the agency level in that case.

Section 618 of the Trade and Tariff Act of 1984, codified at 19 U.S.C. § 1677e (Supp. IV 1986), relieves ITA of the burden of conducting verification if verification occurred during either of the preceding two administrative reviews, unless good cause for verification is shown. Prior to the 1984 act, ITA was required to verify information submitted by a foreign manufacturer during a section 751 administrative review. *Al Tech Specialty Steel Corp. v. United States*, 6 CIT 245, 575 F.Supp. 1277 (1983), *aff'd* 745 F.2d 632 (Fed.Cir.1984). The effective date of the amendment was October 30, 1984. *See* Pub.L. No. 98–573, § 626, 98 Stat. 2948, 3042–43 (1984).[4] Plaintiff argues that as to entries made prior to October 30, 1984, it is entitled to verification. The court rejects this argument. The amendment deals with procedure. After October 30, 1984, ITA was to follow the new procedure. Congress could not have intended the interpretation proffered by plaintiff which would require ITA to continue verification for entries made prior to October 30, 1984 but which would allow ITA not to verify data for subsequent entries during the same review period. ITA has properly interpreted the amendment as applying to its procedures after October 30, 1984.

■ Plaintiff also alleges in this case that an adjustment for English language brochures and promotional materials directed at U.S. sales should be made to U.S. price. Shikoku asserts that it uses English in promotional materials world-wide. ITA made no adjustment to U.S. price because it considered these expenses to be indirect selling expenses not directly attributable to the purchase price transactions at issue. *See* 19 U.S.C. § 1677a(d) (1982). There is nothing in the record to contradict ITA's conclusion, and its view of the law appears correct.

■ Plaintiff also objects to the circumstances of sale adjustment allowed Shikoku for certain rebates consisting of free samples of merchandise given to customers in the home market. In the previous administrative review, ITA verified these rebates and concluded that "[t]he free samples are a selling expense directly related to the sales under review and, therefore, an allowable deduction to foreign market value." 51 Fed.Reg. 45,495, 45,497. As no evidence was presented here indicating a new verification was necessary, the adjustment was appropriate.

■ In addition to the objections it made in the first review, plaintiff now challenges ITA's decision not to conduct an investigation in this review to determine if significant sales were at less than cost of production. As to defendant-intervenor Nissan, plaintiff presented evidence, which had it been new evidence, might have given ITA reason to conduct the requested investigation. The information, however, was the same information which was before the agency during the previous administrative review, and which caused ITA to conduct the below cost of production investigation at that time. That investigation was negative as to plaintiff's claim. ITA found nothing during the first review to warrant a reverification in that proceeding and plaintiff's claim as to reasons why a verification is necessary here are not significantly different. The court sustained ITA's decision not to reverify or further investigate plaintiff's charges in the first annual review, because the investigation was conducted properly. ITA's determination not to conduct another investigation as to Nissan in this case is sustained because plaintiff has produced no new data which would cause ITA to have reasonable grounds to suspect less than cost sales after already investigating this allegation the previous year and arriving at a negative result.

---

4. Section 626 of title VI of Pub.L. 98–573, does provide for delayed implementation of the 1984 amendments with regard to certain provisions of the Tariff Act of 1930. The amendments to these specified provisions apply only with respect to investigations initiated by petition or by the administering authority on or after October 30, 1984. The verification provision is not one of the specified provisions. The 1984 Act specifies, instead, that amendments made to section 1677e are to take effect on the date of enactment—October 30, 1984. *See* note following 19 U.S.C. § 1671 (Supp. IV 1986).

As to Shikoku, no particular allegations were made by plaintiff until it submitted its prehearing brief and no information was submitted that ITA did not have before it when it conducted the earlier cost of production investigations. Thus, as with Nissan, ITA had no reason to believe it should conduct the investigation anew. On their face, the cost of production questionnaire responses submitted during the review at issue did not show sales below cost and the previous investigation did not turn up errors in previous responses. Without new information, ITA had no reason to commence a new investigation into cost of production.

█ As in the prior case, plaintiff claims that the public versions of the respondents' questionnaire responses were inadequate. The court rejects this claim for several reasons. First, it is admitted that Nissan supplied a revised public version of its questionnaire response shortly after its original submission. Shikoku disputed plaintiff's contention of inadequacy and did not submit a revised version until some months later. Although ITA never took a clear position on whether the original submissions satisfied the applicable legal requirements, it obviously found the revised submissions adequate. 52 Fed.Reg. at 15,-971.

Second, Nissan indicated that its revised public response did not include specific numerical data on price adjustments or on prices by form of product, because confidential information could be derived therefrom. Under 19 U.S.C. § 1677f(b) (1982) such a statement, if based on fact, would permit Nissan's action. Furthermore, Nissan permitted confidential disclosure of its proprietary information. *See* 19 C.F.R. § 353.28 (1987). Given the sensitivity of the information at issue, ITA properly balanced the various concerns of the parties. There is no absolute right to a public version of questionnaire responses containing ranged numerical data for all items of information. This is an area where ITA may draw various conclusions about what should be revealed publicly. ITA's determination in this case was reasonable. ITA's determination that Nissan's public version was adequate is, therefore, sustained.

Third, as to Shikoku, plaintiff argues that it had a right to a public response containing ranged data for terms of sale and terms of payment. Shikoku contends the ranged data would reveal specific confidential data of great use to its competitors. ITA did not err in accepting this response. Shikoku did provide the data on a confidential basis. Similarly, Shikoku confidentially provided data on cost of production as well as providing public ranged data for various items relating to cost of production. The court need not reach issues dealing with cost of production data because no cost of production investigation was required.

Although ITA did not reverify information relied on or conduct a new cost of production investigation, the record indicates ITA thoroughly considered plaintiff's various arguments, made appropriate adjustments where it found those arguments sound and generally performed an adequate review. The determination of ITA is sustained.

## JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED: that plaintiff's motion for judgement based upon the administrative record is denied and this action is hereby dismissed.