The TORRINGTON COMPANY,
Plaintiff,

v.

UNITED STATES, Defendant,

Rose Bearings, Ltd.; RHP Bearings, RHP Bearings, Inc. and United Precision Industries; INA Bearing Company, Inc. and INA Bearing Company, Ltd.; SKF USA, Inc., AB SKF and SKF (U.K.) Limited, Defendant–Intervenors.

Court No. 89–06–00311.

United States Court of International Trade.

Sept. 11, 1991.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., William A. Fennell, Washington, D.C., and Wesley K. Caine, Arlington, Va., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Jeanne E. Davidson of counsel), John D. McInerney, Sr. Counsel, Douglas S. Cohen, Craig R. Giesse, Diane McDevitt, Stephanie J. Mitchell and Maria Solomon, Atty. Advisors, Office of Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., for defendant.

Tanaka Ritger & Middleton, H. William Tanaka, Michele N. Tanaka and Michael J. Brown, Washington, D.C., for Rose Bearings, Ltd.

Covington & Burling, Harvey M. Applebaum and David R. Grace, Washington, D.C., for RHP Bearings, RHP Bearings, Inc. and United Precision Industries.

Katten, Muchin, Zavis & Dombroff, Thomas A. Rothwell, Jr., Joseph A. Vicario, Jr., James M. Lyons, Alfred G. Scholle and Callie Georgeann Pappas, for INA Bearing Co., Inc. and INA Bearing Co., Ltd.

Howrey & Simon, Paul Plaia, Jr., Herbert C. Shelley, Joel D. Kaufman, Cecilia H. Gonzalez, Alice A. Kipel, Lauren D. Frank and Juliana M. Cofrancesco, Washington, D.C., for SKF USA, Inc., AB SKF and SKF (U.K.) Ltd.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), brings this action to challenge the final determination of the Department of Commerce, International Trade Administration ("Commerce" or "ITA") in the antidumping investigation of antifriction bearings from the United Kingdom ("UK"). *Final Determinations of Sales at Less Than Fair Value; Antifriction Bearings (Other Than Spherical Plain Bearings and Tapered Roller Bearings) and Parts Thereof From the United Kingdom; and Final Determination of Sales at Not Less Than Fair Value: Spherical Plain Bearings Parts Thereof From the United Kingdom,* 54 Fed.Reg. 19,120 (1989). Pursuant to Rule 56.1 of the rules of this Court, plaintiff seeks partial judgment upon the agency record regarding that part of the ITA's determination which stated that the petition encompassed five separate classes or kinds of antifriction bearings. Plaintiff also requests the Court to remand the case with directions that the ITA reinstitute those investigations of British costs of production which were rescinded.

## Discussion

■ A final antidumping determination by the Department of Commerce will be affirmed unless that determination is not supported by substantial evidence or is otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988) (citations omitted).

### I. Class or Kind

The facts of this case were set out in detail in *Torrington Co. v. United States*, 14 CIT ——, 745 F.Supp. 718, *aff'd*, 938 F.2d 1278 (Fed.Cir.1991). Briefly, while Torrington's petition described the subject merchandise as all ground antifriction bearings (except tapered roller bearings) and parts thereof, the ITA subdivided the merchandise into five classes or kinds: ball bearings, spherical roller bearings, cylindrical roller bearings, needle roller bearings and spherical plain bearings. 54 Fed.Reg. at 18,999. Plaintiff claims Commerce does not have the authority to modify the petition's description of "class or kind," but even if it did, its modification is not supported by substantial evidence in the record.

■ The Court adheres to its opinion in *Torrington* and finds that, as a matter of law, the ITA has the authority to subdivide the petition's class or kind description when necessary, and when there is substantial evidence to support the subdivision.

■ In the case at bar, plaintiff has attempted to prove that antifriction bearings are one class or kind by showing similarities among the various antifriction bearings within the framework of the criteria set forth in *Diversified Prods. Corp. v. United States*, 6 CIT 155, 162, 572 F.Supp.

883, 889 (1983).[1] The Court finds that the similarities among the bearings are outweighed by substantial evidence supporting the finding of five classes or kinds. *See Torrington*, 14 CIT at ——, 745 F.Supp at 723–27. Accordingly, the determination of the ITA that antifriction bearings comprise five classes or kinds is affirmed.

### II. Cost of Production

■ Plaintiff also contends that the ITA improperly rescinded investigations of the British respondents' costs of production ("COP"). The Tariff Act of 1930, as amended, 19 U.S.C. § 1677b(b) (1988), provides that, if the ITA "has reasonable grounds to believe or suspect that sales in the home market of the country of exportation ... have been made at prices which represent less than the cost of producing the merchandise in question, ... such sales shall be disregarded in the determination of foreign market value." A cost of production investigation may be initiated at the request of the petitioner if the petitioner files its request in a timely manner and the information supporting the request meets statutory and judicial standards. 19 U.S.C. § 1677b(b); *Floral Trade Council of Davis, Cal. v. United States*, 12 CIT 981, 982, 698 F.Supp. 925, 926 (1988); *Al Tech Specialty Steel Corp. v. United States*, 6 CIT 245, 247–48, 575 F.Supp. 1277, 1280 (1983), *aff'd*, 745 F.2d 632 (Fed.Cir.1984).

In its petition, Torrington alleged that sales in the home markets of the British manufacturers of antifriction bearings ("AFBs") were being made at prices below the cost of production. Administrative Record ("AR") (Pub.) Doc. 1 at 108–10. On the basis of the petition's allegations, the ITA initiated an investigation as to the cost of producing AFBs in the UK. The foreign manufacturers, however, objected based on the fact that Torrington's allegations relied on country-wide data, rather than the company-specific information required by this court in *Al Tech*. Commerce concurred and on July 22, 1988, Commerce asked Tor-

---

1. The criteria include the general physical characteristics of the merchandise, the expectations of the ultimate purchasers, channels of trade in which the goods travel, the ultimate use of the product, and its cost. *Id.*

rington to supplement its submissions. AR (Pub.) Doc. 120.

When Torrington's supplements still did not satisfy the statutory and *Al Tech* standards, Commerce rescinded the COP investigations in each of the five classes or kinds of bearings as to all the foreign manufacturers. *See* AR (Pub.) Doc. 160. However, Commerce provided Torrington with an opportunity to submit revised cost allegations which would be acceptable. *Id.* at 5; AR (Pub.) Doc. 164 at 2–3. The petitioner did submit additional data within the ITA's stated deadline, and Commerce then reinstituted the COP investigations covering ball bearings and spherical roller bearings manufactured by SKF in the UK, and needle roller bearings made by INA in the UK. 53 Fed.Reg. at 45,314. However, Commerce did not reinstitute the investigation regarding cylindrical roller bearings manufactured by RHP in the UK.

Plaintiff argues that Commerce applied an overly onerous standard for initiation of the COP investigation. Since the statute calls for an investigation whenever the ITA has "reasonable grounds" for believing that sales in the home market were made below cost, plaintiff asserts the standard is a relatively easy one to meet and may be satisfied by country-wide allegations of below cost sales. In support, Torrington cites *Connors Steel Co. v. United States*, 2 CIT 242, 527 F.Supp. 350 (1981), wherein this court held that the ITA had a duty to investigate the foreign manufacturers' costs even though the petitioner had not submitted evidence directly from the specific producer's costs.

The court in *Connors Steel* held that it would be "unreasonable to expect a party to produce data directly from the costs of production of a competitor." 2 CIT at 247, 527 F.Supp. at 356. Certainly, there can be no argument on that point, particularly where that data is confidential and in the exclusive control of the competitor. The issue in this case is not whether Torrington's allegations were based on competitor's costs, but rather whether the allegations should have been made against specific competitors rather than against entire nations. Many of the producers in this case manufacture bearings in more than one country. Therefore, apparently to ease its burden, the petitioner chose to allege below cost sales against particular countries instead of particular producers. Initially, the ITA acquiesced in this methodology, but later reverted to the company-specific standard when foreign manufacturers protested the more lenient criteria.

Commerce relies on this court's opinion in *Al Tech* to support it application of the more demanding company-specific standard for initiation of a COP investigation. In *Al Tech*, the court rejected the evidence presented by plaintiff as reasonable grounds to support initiation of a COP investigation because the information was "much too general in nature." 6 CIT at 247, 575 F.Supp. at 1280. That evidence consisted of a foreign steel industry press release, a European Commission paper, a series of antidumping and countervailing duty petitions filed against producers of different products and two American trade papers. 6 CIT at 248, 575 F.Supp. at 1281. The court found the evidence "entirely too remote and generalized to give rise to a reasonable suspicion of below-cost-of-production sales." 6 CIT at 250, 575 F.Supp. at 1282. Furthermore, the court explained that "absent a *specific* and *objective* basis for suspecting that a *particular* foreign firm is engaged in home market sales at prices below its cost of production, section 773(b)'s threshold requirement of 'reasonable grounds to believe or suspect' has not been satisfied." *Id.* (Emphasis in original.)

■ In the case at bar, Torrington based its allegations on its own costs of production adjusted for the wage rate, material and overhead costs, financing charges and general selling and administrative expenses in the UK. However, Torrington did not explain why every antifriction bearing manufacturer in the UK would have identical costs, except to say that all the producers charge substantially identical prices. AR (Pub.) Doc. 180 at 38–39. This does not constitute evidence of even similar costs, since producers may charge identical prices

merely to obtain a share of the market, though their costs may be significantly higher. Indeed, the prevention of such predatory pricing is precisely why the antidumping laws exist.

■ The country-wide data submitted by Torrington was too general to constitute "reasonable grounds to believe or suspect" that the home market sales of *particular* producers were at prices below the cost of production. The court in *Al Tech* clearly required that petitioners submit specific and objective evidence that particular producers were selling below cost in their home markets, and the Court sees no reason to diverge from that precedent.

■ In addition, the statute's requirement of "reasonable grounds" does not imply, as plaintiff claims, that initiation of a cost investigation should be no more difficult than initiation of the principal investigation itself. Initiation of an antidumping proceeding requires a facially sufficient petition supported by information "reasonably available to the petitioner." 19 U.S.C. § 1673a(b)(1) (1988). The section's legislative history indicates that Congress intended that Commerce decline to initiate investigations only where they are "clearly frivolous" or where the petitioner has not provided information reasonably available to it. H.R.Rep. No. 317, 96th Cong., 1st Sess. 51 (1979); S.Rep. No. 249, 96th Cong., 1st Sess. 63, *reprinted in* 1979 U.S.Code Cong. and Admin.News 381, 449.

By contrast, a cost investigation will be initiated only where *Commerce* has reasonable grounds to suspect that a respondent is selling below cost. There is no correlation between what constitutes reasonable grounds to the ITA, and what constitutes information reasonably available to the petitioner. Indeed, the information which is reasonably available to a particular petitioner can be substantially more or less consequential than what Commerce would consider reasonable grounds, depending on how resourceful the petitioner may be. Hence, the relative rigor of the standard will vary from case to case.

■ Torrington also argues that the ITA's application of the company-specific standard was improper in that it was a deviation from ITA precedent. Whereas in the past the ITA has instituted COP investigations based on country-wide allegations of below cost sales, in this case the agency demanded that Torrington provide company-specific and product-specific data.

It is a principle of administrative law that an "agency must either conform to its prior norms and decisions or explain the reason for its departure from such precedent." *Mississippi Valley Gas Co. v. Federal Energy Regulatory Comm'n*, 659 F.2d 488, 506 (5th Cir.1981); *see also Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). However, an agency is "not bound to rigid adherence to precedent" where the public interest and the pursuit of justice require deviation from prior holdings. *McHenry v. Bond*, 668 F.2d 1185, 1192 (11th Cir.1982).

The ITA acknowledges that it veered away from past practice in this case but asserts that it provided a good reason for doing so. *Defendant's Second Memorandum in Opposition to Plaintiffs' Motions for Partial Judgment Upon the Agency Record Regarding Certain Fundamental Issues* at 63. Specifically, the Government states that its interpretation of the statute regarding initiation of COP investigations changed after the ruling of this court in *Al Tech*. *See* AR (Pub.) Doc. 160 at 5. This constitutes sufficient reason for the ITA's departure from precedent.

Accordingly, the Court finds that the ITA's decision to rescind the cost of production investigations of all five classes or kinds of bearings from the United Kingdom because no company-specific data was provided was in accordance with law, and it is therefore affirmed.

■ Finally, Torrington contests the ITA's decision not to reinitiate the investigation of RHP's cylindrical roller bearings manufactured in the UK after supplemental information on costs was submitted. The ITA indicated that this COP investigation was not reinstituted because Torring-

ton's revised cost allegations did not set forth company-specific sales data such as price. The record indicates that Torrington submitted extensive cost data on RHP's ball bearings, but not on cylindrical roller bearings. *See* United Kingdom Record (Conf.) Doc. 65. Since cost allegations must include data on the particular product at issue, the Court finds no error in the ITA's decision not to reinstitute the investigation of RHP's cylindrical roller bearings.

### Conclusion

The decision of the ITA to subdivide the petition's class or kind description of anti-friction bearings into five classes or kinds was in accordance with law and is affirmed.

The decision of the ITA to rescind the investigations of the UK respondents' costs of production was in accordance with law and is affirmed.