The TORRINGTON COMPANY,
Plaintiff,

v.

UNITED STATES, Defendant,

SNR Roulements, SNR Bearings, USA, Inc. and ICSA Industries Cuscinetti S.p.A.; INA Bearing Co., Inc. and INA Walzlager Schaeffler KG; GMN Georg Muller Nurnberg AG; SKF USA, Inc., AB SKF, SKF GmbH and SKF Gleitlager GmbH; Caterpillar, Inc.; Fag Kugelfischer Georg Schaefer KGaA and Fag Bearings Corporation; Hugo Finkenrath OHG, Defendants–Intervenors.

Court No. 89–06–00359.

United States Court of International Trade.

Feb. 28, 1992.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, David Scott Nance and

William A. Fennell, Washington, D.C., for Torrington Co.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jeanne E. Davidson (John D. McInerney, Sr. Counsel, Douglas S. Cohen, Craig R. Giesse, Diane M. McDevitt, Stephanie J. Mitchell and Maria T. Solomon, Atty.-Advisors, Office of the Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., of counsel), for U.S.

Donovan Leisure Newton & Irvine, Pierre F. de Ravel d'Esclapon, New York City, for SNR Roulements, SNR Bearings, USA, Inc. and ICSA Industries Cuscinetti S.p.A.

Arent Fox Kintner Plotkin & Kahn, Stephen L. Gibson, Washington, D.C., for INA Bearing Co., Inc. and INA Walzlager Schaeffler KG.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell, New York City, for GMN Georg Muller Nurnberg AG.

Howrey & Simon, Paul Plaia, Jr., Herbert C. Shelley, Joel D. Kaufman, Cecilia H. Gonzalez, Alice A. Kipel, Lauren D. Frank, and Juliana M. Cofrancesco, Washington, D.C., for SKF USA, Inc., AB SKF, SKF GmbH and SKF Gleitlager GmbH.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Richard M. Belanger and Neil R. Ellis, Washington, D.C., for Caterpillar, Inc.

Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman and David L. Simon, New York City, for FAG Kugelfischer Georg Schaefer KGaA and FAG Bearings Corp.

Wilmer, Cutler & Pickering, Leonard M. Shambon, Stavros J. Lambrinidis and Barbara K. Bracher, Washington, D.C., for Hugo Finkenrath OHG.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), brings this action to challenge the final determination of the Department of Commerce, International Trade Administration ("Commerce" or "ITA"), in the antidumping investigation of antifriction bearings from the Federal Republic of Germany ("Germany"). *Final Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany* ("Final Determinations"), 54 Fed.Reg. 18,992 (1989). Pursuant to Rule 56.1 of the Rules of this Court, plaintiff seeks partial judgment upon the agency record regarding that part of the ITA's determination which stated that the petition encompassed five separate classes or kinds of antifriction bearings. Torrington also contests the ITA's decision to discontinue its investigation of the German costs of production and the decision to exclude split pillow block housings from the scope of the investigations.

### Discussion

A final determination by the Department of Commerce will be sustained unless that determination is not supported by substantial evidence or is otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988). Under this standard, Commerce is granted considerable deference "in both its interpretation of its statutory mandate and the methods it employs in administering the antidumping law." *Chemical Prods. Corp. v. United States*, 10 CIT 626, 628, 645 F.Supp. 289, 291 (1986) (citations omitted).

The Court will not overturn a final antidumping determination merely because the plaintiff "is able to produce evidence ... in support of its own contentions and in opposition to the evidence supporting the agency's determination." *Hercules, Inc. v. United States*, 11 CIT 710, 755, 673 F.Supp. 454, 490 (1987). The evidence presented by plaintiff "must be enough to

convince the Court that a reasonable mind would not have found ITA's evidence sufficient to support its conclusion." *Torrington Co. v. United States ("Torrington I ")*, 14 CIT ——, ——, 745 F.Supp. 718, 723 (1990), *aff'd*, 938 F.2d 1276 (Fed.Cir.1991).

## I. Class or Kind

■ The facts of this case were set out in detail in *Torrington I*. Briefly, while Torrington's petition described the subject merchandise as all ground antifriction bearings (except tapered roller bearings) and parts thereof, the ITA subdivided the merchandise into five classes: ball bearings, spherical roller bearings, cylindrical roller bearings, needle roller bearings and spherical plain bearings. 54 Fed.Reg. at 18,999. Plaintiff claims Commerce does not have the authority to modify the petition's description of "class or kind," but even if it did, its modification is not supported by substantial evidence in the record.

Our appellate court has adjudged that, as a matter of law, the ITA has the authority to subdivide the petition's class or kind description when there is substantial evidence to support the subdivision. 938 F.2d at 1277–78. In the case at bar, plaintiff has attempted to prove that antifriction bearings are one class or kind by showing similarities among the various bearings within the framework of the criteria set forth in *Diversified Prods. Corp. v. United States*, 6 CIT 155, 162, 572 F.Supp. 883, 889 (1983).[1] The Court finds that the similarities among the bearings are outweighed by substantial evidence supporting the finding of five classes or kinds. *See Torrington I*, 14 CIT at ——, 745 F.Supp. at 723–27. Accordingly, that determination of the ITA is affirmed.

## II. Cost of Production

■ Torrington also claims that the ITA's decision to terminate the investigation of German costs of production ("COP")

was not in accordance with law. The Tariff Act of 1930, as amended, 19 U.S.C. § 1677b(b) (1988), provides that, if the ITA "has reasonable grounds to believe or suspect that sales in the home market of the country of exportation ... have been made at prices which represent less than the cost of producing the merchandise ..., such sales shall be disregarded in the determination of foreign market value." A cost of production investigation may be initiated at the request of the petitioner if the petitioner files its request in a timely manner and the information supporting the request meets statutory and judicial standards. 19 U.S.C. § 1677b(b); *Al Tech Specialty Steel Corp. v. United States*, 6 CIT 245, 250, 575 F.Supp. 1277, 1282 (1983), *aff'd*, 745 F.2d 632 (Fed.Cir.1984); *Floral Trade Council of Davis, Cal. v. United States*, 12 CIT 981, 982, 698 F.Supp. 925, 926 (1988).

In its petition, Torrington alleged that sales in the home market of German manufacturers of antifriction bearings ("AFBs") were being made at prices below the cost of production. General Administrative Record ("GAR") (Pub.) Doc. 1 at 102–04. On the basis of the petition's allegations, the ITA initiated an investigation as to the cost of producing AFBs in Germany. The importers objected to the investigation based on the fact that Torrington's allegations relied on a conglomeration of German costs, rather than the company-specific data required by this court in *Al Tech*. Commerce concurred and on July 22, Commerce asked Torrington to supplement its submissions. GAR (Pub.) Doc. 120.

When Torrington's supplements still did not satisfy the statutory and *Al Tech* standards, Commerce discontinued the COP investigations in each of the five classes or kinds of bearings as to all the foreign manufacturers. GAR (Pub.) Doc. 160. Plaintiff contends that the company-specific standard is an overly onerous one which

---

**1.** The criteria include the general physical characteristics of the merchandise, the expectations of the ultimate purchasers, channels of trade in which the goods travel, the ultimate use of the product, and its cost or manner of advertising or display. *Id. See also Kyowa Gas Chem.*

*Indus. Co. v. United States*, 7 CIT 138, 140, 582 F.Supp. 887, 889 (1984).

These criteria are codified at 19 U.S.C. § 1677j(d)(1) for scope determinations concerning later developed merchandise.

is not consistent with the mandates of the Tariff Act.

In *Torrington Co. v. United States* (*Torrington II*), 15 CIT ——, 772 F.Supp. 1284 (1991), this Court followed the *Al Tech* ruling and held that, a plaintiff seeking initiation of a COP investigation must "submit specific and objective evidence that particular producers were selling below cost in their home markets." *Id.* at ——, 772 F.Supp. at 1288. *Cf. Monsanto Co. v. United States*, 12 CIT 949, 952–53, 698 F.Supp. 285, 288–89 (1988) (cost investigations for different producers considered separately). The Court adheres to its opinion in *Torrington II* and finds that Commerce applied the correct standard in deciding to rescind the COP probes in this case. Moreover, Torrington's admitted lack of company-specific data supports Commerce's decision.

■ After revoking the COP investigations, the ITA afforded Torrington the opportunity to submit revised cost allegations which would satisfy the statutory and judicial standards, and which could result in a re-opening of the COP inquiries. GAR (Pub.) Doc. 164 at 2–3. Petitioner submitted additional data within the ITA's stated deadline and Commerce reactivated the investigations pertaining to ball bearings manufactured by SKF, FAG and GMN, spherical roller bearings made by FAG, cylindrical roller bearings produced by SKF, INA and FAG and needle roller bearings manufactured by SKF and FAG. *Preliminary Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany* ("Preliminary Determinations"), 53 Fed.Reg. 45,353, 45,355 (1988).

Commerce did not revive the investigations of ball bearings and needle roller bearings made by INA because, after correcting some methodological errors made by Torrington, the ITA found those sales to be at prices *above* the cost of production. *See* GAR (Pub.) Doc. 338. It seems Torrington's estimates of INA's costs were based on Torrington's own costs plus INA's actual general, sales and administrative ("GS & A") expenses. However, Torrington failed to separate INA's direct selling expenses from their GS & A expenses. *Id.* Hence, the estimated total cost of production was improperly inflated. To correct this miscalculation, Commerce adjusted the GS & A expenses downward and then "compared costs net GS & A to home market prices less all movement charges, as well as all direct and indirect selling expenses claimed by respondents." GAR (Pub.) Doc. 338. After the adjustment, the ITA found that, as to INA's German sales, "virtually all ball bearings and needle roller bearings were sold at prices *above* the cost of production." 54 Fed.Reg. at 19,019. Consequently, Commerce found that there were no grounds to believe or suspect sales were below cost and the COP investigations as to INA's sales of ball bearings and needle roller bearings were not reinstated.

Plaintiff finds fault with this methodology in two ways. First, Torrington claims that the exclusion of GS & A expenses from cost of production was contrary to agency practice, as upheld by this court. *See Timken Co. v. United States*, 11 CIT 786, 811, 673 F.Supp. 495, 518 (1987). The *Timken* opinion states that GS & A expenses may properly be included in the calculations of cost. *Id.* Here, the ITA does not claim that GS & A expenses are not a proper factor in cost estimates. Rather, Commerce found that Torrington erred in failing to separate selling expenses from GS & A expenses. Consequently, the ITA separated those expenses itself. That decision was a reasonable exercise of the ITA's discretion under section 773(b) of the Tariff Act.

Second, Torrington alleges that the ITA deducted all GS & A expenses from cost, but deducted only sales expenses and movement charges from the opposite side of the equation, *price*. Thus the estimated cost "was adjusted downward disproportionately" more than was the price, and the ensuing finding that sales were at prices above cost may have been skewed. *Memorandum in Support of Plaintiff Torrington Company's Motion for Partial Judg-*

*ment Upon an Agency Record* at 111. Plaintiff, however, provides no evidence or indication that this was the case. Since the Department's decision to separate selling expenses from GS & A expenses was reasonable, the adjustment was a lawful exercise of the ITA's discretion and the Court will not disturb that finding.

## III. Scope

■ Lastly, Torrington alleges that the ITA wrongly excluded split pillow block housings manufactured in Germany from the scope of the investigations. Torrington claims that its petition and additional evidence support the inclusion of pillow block housings in the investigations and in the antidumping duty order which followed.

This court has acknowledged that Commerce retains broad discretion to define the scope of an antidumping investigation. *Mitsubishi Elec. Corp. v. United States,* 12 CIT 1025, 1046–47, 700 F.Supp. 538, 555 (1988), *aff'd,* 898 F.2d 1577 (Fed.Cir.1990); *see also Smith–Corona Group v. United States,* 713 F.2d 1568, 1582 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); *NTN Bearing Corp. of America v. United States,* 14 CIT ——, ——, 747 F.Supp. 726, 731 (1990). Of course, that discretion must be exercised reasonably and any consequent determination must be supported by substantial evidence in the administrative record. *American Lamb Co. v. United States,* 785 F.2d 994, 1001 (Fed.Cir.1986); *Gold Star Co. v. United States,* 12 CIT 707, 708, 692 F.Supp. 1382, 1383 (1988), *aff'd sub nom., Samsung Elec. Co. v. United States,* 873 F.2d 1427 (Fed.Cir.1989).

When a question arises as to whether a particular product is within or without the scope of an investigation, the ITA first must determine whether the petition covers that product. If the petition is ambiguous, Commerce then examines additional evidence. If the scope is still unclear, Commerce looks to other criteria, including the factors enumerated in *Diversified Prod-*

*ucts,* 6 CIT at 162, 572 F.Supp. at 889.[2] *See Memorandum of the United States in Opposition to Plaintiffs' Motions for Partial Judgment Upon the Agency Record Regarding Certain Fundamental Issues* ("Defendant's Memorandum") at 62–64.

Torrington's petition, filed on March 31, 1988, described the merchandise in question as

all ground antifriction bearings and all parts thereof both finished and unfinished with the exception of tapered roller bearings. (Footnote omitted). Included within the scope of this petition are ball bearings, cylindrical roller bearings, spherical roller bearings, spherical plain bearings, needle roller bearings, thrust bearings, tappet bearings, and all mounted bearings such as set screw housed units, bushings, *pillow block units,* flange, cartridge and take-up units and parts including balls, rollers, cages or retainers, cups, shields and seals.

GAR (Pub.) Doc. 1 at 13 (emphasis added). The petition also enumerated various tariff descriptions of antifriction bearings and parts thereof, among which were descriptions for ball or roller bearing pillow block units and their parts. *Id.* at 22.

Indeed, the ITA included pillow blocks in its Notice of Initiation of Investigation, as well as in the preliminary and final determinations. *See* GAR (Pub.) Doc. 11 at 2; *Preliminary Determinations,* 53 Fed.Reg. at 45,361; *Final Determinations,* 54 Fed. Reg. at 18,997. However, Commerce stated in the final determinations that the " 'mounted bearings,' such as pillow block *units,* that are specifically noted in the petition can be clearly distinguished from pillow block *housings* by the presence of the bearing itself." 54 Fed.Reg. at 19,016 (emphasis added). Hence, the housings, which do not incorporate a bearing, were held to be outside the scope of the investigations. *Id.*

Torrington counters that a pillow block housing is a part of a pillow block unit and, therefore, was included within the scope of

---

**2.** If the scope determination concerns later developed merchandise, the ITA must use the cri- teria codified at 19 U.S.C. § 1677j(d)(1).

the petition as one of the "parts thereof." Moreover, the petition specifically encompassed housed bearing units which "include pillow blocks." GAR (Pub.) Doc. 1 at 19. Thus, Torrington finds evidence in the record to conclude that split pillow block housings should have been included within the purview of the investigations as parts of pillow block units.

The Government argues that a pillow block housing is not a part of a pillow block unit. The petition enumerated several parts of antifriction bearings, including "balls, rollers, cages or retainers, cups, shields and seals." GAR (Pub.) Doc. 1 at 13. There was no mention of housings among the listing of parts and the Government concludes, therefore, that parts "necessarily exclude housings in general and 'split pillow block housings' in particular." Defendant's Memorandum at 102.

Commerce's method of analysis as to scope requires first a look at the petition to determine whether the product was meant to be included. The petition herein referred to pillow blocks and to parts thereof, but did not specifically mention pillow block housings among the parts listed. Given this ambiguity, the ITA correctly looked to other evidence in the record to determine if housings, as opposed to housed units, were properly includable. The record indicates that a split pillow block housing consists of two cast iron or steel hemispheres that enclose an antifriction bearing. GAR (Pub.) Doc. 444 at 122, 128. The housing aligns, lubricates and supports the bearing, but is not otherwise attached to it. *Id.* at 130.

Respondent Hugo Finkenrath submitted evidence that pillow block housings were not encompassed by the petition because they do not contain bearings, and are not parts of bearings. GAR (Pub.) Doc. 482 and appendices. Finkenrath also argued that the housings differed from antifriction bearings with respect to the elements listed in *Diversified Products. Id.* at 3–8; *see* note 1, *supra.* Petitioner Torrington countered that it produces split pillow block bearings and mounted bearings and that certain housings were products "of con-

cern" to the petitioner. GAR (Pub.) Doc. 444 at 147. However, Torrington did not state that *pillow block housings* were of concern to it, with the possible exception of a line in its submission of March 21, 1989, just days before the issuance of the final determinations, wherein Torrington asserted that antifriction bearing parts "may include housings." GAR (Pub.) Doc. 504 at 3.

In the final determinations, Commerce found that pillow block housings were not subject to the investigations because they were not mentioned in the petition and because "the only factual information which has been provided indicates that pillow block housings are not bearings, they do not contain bearings, and they are not parts or subassemblies of bearings." 54 Fed.Reg. at 19,016. That information includes an abundance of evidence from Finkenrath which distinguished pillow block housings from antifriction bearings and their parts. GAR (Pub.) Doc. 482 and appendices.

The determination as to whether a product is covered by an antidumping investigation is one which the ITA must make with ample deference to the intent of the petition. *Royal Business Machines Inc. v. United States*, 1 CIT 80, 87, 507 F.Supp. 1007, 1014 (1980), *aff'd*, 69 CCPA 61, 669 F.2d 692 (1982); *Mitsubishi*, 12 CIT at 1046, 700 F.Supp. at 555. However, where, as here, the petition is ambiguous, Commerce must rely on other evidence to make its decision. The evidence in the administrative record is substantial and it supports Commerce's decision to exclude split pillow block housings from the investigations. The fact that Torrington now interprets its submissions to have encompassed implicitly pillow block housings is not sufficient to overturn a supportable scope determination. *See Torrington I*, 14 CIT at ——, 745 F.Supp. at 723.

### Conclusion

The determination of the ITA to subdivide the petition's description of the class or kind of merchandise to be investigated and to rescind the investigations of the

German respondents' costs of production and to exclude split pillow block housings from the scope of the investigations are supported by substantial evidence and are otherwise in accordance with law, and are affirmed.