**SUNDSTRAND CORPORATION,**
Plaintiff,

v.

**UNITED STATES, Defendant.**

Slip Op. No. 95–114.
Court No. 93–03–00149.

United States Court of
International Trade.

June 21, 1995.

Barnes, Richardson & Colburn, Chicago, IL (Robert E. Burke and Lawrence M. Friedman), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen.; and David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Jus-

tice (Michael S. Kane); of counsel: Stacy J. Ettinger, Attorney–Advisor, U.S. Dept. of Commerce, Washington, DC, for defendant.

### OPINION

TSOUCALAS, Judge:

Plaintiff, Sundstrand Corporation, its operating unit Sundstrand Aerospace and its wholly-owned subsidiary Sundstrand Pacific, Pte., Ltd. (collectively "Sundstrand"), brings this motion, pursuant to Rule 56.2 of this Court, for judgment upon the agency record contesting the final scope ruling issued by the U.S. Department of Commerce, International Trade Administration ("Commerce"), concluding that Sundstrand's part number 742973, the outer race of a cylindrical roller bearing, is within the scope of the countervailing duty order on antifriction bearings (other than tapered roller bearings) and parts thereof from Singapore. *Final Affirmative Countervailing Duty Determinations and Countervailing Duty Orders: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Singapore ("Final Determination")*, 54 Fed.Reg. 19,125 (May 3, 1989).

### Background

On March 31, 1988, The Torrington Company ("Torrington"), a United States manufacturer of antifriction bearings ("AFBs"), filed an antidumping and countervailing duty petition on all antifriction bearings (other than tapered roller bearings) and all parts thereof, both finished and unfinished from several countries, including Singapore. *Petition Requesting the Imposition of Antidumping and Countervailing Duties on Imported Antifriction Bearings ("Petition")* at 1–20. Sundstrand took no role in the resulting administrative investigation or subsequent annual reviews. *Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record and Brief in Support Thereof ("Plaintiff's Brief")* at 5.

In response to the petition, Commerce initiated a countervailing duty investigation on antifriction bearings (other than tapered roller bearings) and parts thereof from Singapore. *Initiation of Countervailing Duty Investigation; Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Singapore*, 53 Fed.Reg. 15,084 (April 27, 1988). On September 6, 1988, Commerce published its preliminary affirmative countervailing duty determination, *Preliminary Affirmative Countervailing Duty Determinations: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Singapore ("Preliminary Determination")*, 53 Fed.Reg. 34,329 (September 6, 1988), which specifically identified an outer race of a cylindrical bearing—as a bearing part covered by the investigation:

> These investigations cover all of the subject bearings and parts thereof outlined above with certain limitations. With regard to *finished* parts (inner race, outer race, cage, rollers, balls, seals, shields, etc.), all such parts *are included* in the scope of these investigations. For *unfinished* parts (inner race, outer race, rollers, balls, etc.), such parts are included *if* (1) they have been heat treated, or (2) heat treatment is not required to be performed on the part. Thus, the only unfinished parts that are *not* covered by these investigations are those where the part will be subject to heat treatment after importation.

*Preliminary Determination*, 53 Fed.Reg. at 34,333.

On May 3, 1989, Commerce published its Final Determination and Order. *Final Determination*, 54 Fed.Reg. 19,125. The Final Determination incorporated the language set forth above from the Preliminary Determination specifically identifying an "outer race" as a bearing part within the scope of the investigation. *Final Determinations of Sales at Less than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany ("Scope Appendix")*, 54 Fed.Reg. 18,992, 18,997–98 (May 3, 1989).

During the investigation, several respondents argued that aerospace bearings "have physical characteristics that are different from those of the bearings subject to these investigations," "satisfy unique customer expectations and needs," and, are "specialized products manufactured in accordance with

specialized and detailed aerospace standards." *Scope Appendix*, 54 Fed.Reg. at 19,010–12. Commerce, however, refused to exclude such bearings from the scope of its order on the basis of quality, design, precision, end-use, material content or degree of engineering control. *Id.* at 19,012. Similarly, the Final Determination emphasized that "tariff classification numbers are *not* determinative of the products under investigation." *Id.* at 19,011.

Specifically, Commerce stated that:

... to accept the argument that aircraft engine bearings are a separate class or kind would require the Department to reach an unreasonable conclusion—*i.e.,* that for each specific application in which a particular bearing may be used, a separate class or kind of merchandise would be determined to exist.

That material content, quality, design, precision, or degree of engineering control may differ is typical of the subject merchandise since bearings are used in an enormous variety of specialized final applications. However, these products all provide and have in common the functional capabilities of the bearings under investigation.

*Scope Appendix*, 54 Fed.Reg. at 19,012.

Accordingly, Commerce determined that its countervailing duty order regarding antifriction bearings would include all AFBs used in aviation applications so long as they were related to the reduction of friction. *Id.* at 19,010.

On October 30, 1992, Sundstrand filed a request for clarification of the scope of the countervailing duty order in this investigation. *Plaintiff's Brief* at 6. On February 4, 1993, Commerce determined that the product in question as imported was within the scope of the order on cylindrical roller bearings and parts thereof. *Final Scope Ruling— Countervailing Duty Order on Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Singapore: Request by Sundstrand Aerospace ("Final Scope Ruling")* at 1–4. Commerce rejected Sundstrand's arguments regarding the end-use and final application of the bearing as irrelevant. *Final Scope Ruling* at 3. On March 5, 1993, Sundstrand filed its summons challenging Commerce's Final Scope Ruling and the present action ensued.

### Discussion

■ This Court must uphold Commerce's determination as to whether a particular type of merchandise is within the scope of a countervailing duty order unless Commerce's determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir.1990).

In this action, Sundstrand requests a review of Commerce's response to its request for a scope clarification of the countervailing duty order. Sundstrand raises three arguments alleging Commerce's findings were not in accordance with law and were not supported by substantial evidence. *Plaintiff's Brief* at 7–8.

### 1. Scope of Order

■ Sundstrand argues that part number 742973 performs substantial and independent non-antifriction bearing functions, is substantially advanced in function and value and is therefore outside the scope of the merchandise covered by the countervailing duty order. Sundstrand bases its argument upon several Commerce determinations which found an item to be outside the class or kind of merchandise covered by an order because of substantial advancements in function or value. Sundstrand cites as an example *Final Determination of Sales at Less Than Fair Value: Antifriction Bearings (Other Than*

*Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany,* 54 Fed.Reg. 18,992, 19,017 (May 3, 1989) wherein Commerce stated that when the value of a bearing incorporated into the imported product constitutes a relatively small portion of the overall value of the components, it "appears obvious that the product is substantially more than a bearing." Sundstrand contends the principle of administrative law that an agency must be consistent with its prior actions or explain its deviation therefrom compels Commerce to apply the same standards as it did in the cited scope clarification of textile machine components. *Plaintiff's Brief* at 10–16.

Plaintiff asserts part number 742973 is advanced in both function and value beyond a simple bearing. Sundstrand states the part is principally a housing which holds a hydraulic unit together and provides support and positioning for a hydraulic assembly. Its function of incorporating the outer race of a cylindrical roller bearing is ancillary to these other functions, according to plaintiff. *Plaintiff's Brief* at 14–15.

Commerce states it has correctly determined that Sundstrand's part number 742973 is covered by the order because the outer race of a cylindrical bearing is a bearing part and falls squarely within the definition of the covered merchandise. Defendant states its published determinations make it clear Commerce did not intend to distinguish between AFBs based upon criteria such as design features, end-applications, quality, precision or enhanced capabilities. Defendant asserts it properly relied upon the dispositive descriptions of merchandise contained in the petition, initial investigation and determinations of Commerce. Commerce characterizes Sundstrand's position as an unreasonable construction of the order and as inadequately supported by the argument that its bearing parts are for use in aerospace engines and are unique and highly designed. *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record ("Defendant's Brief")* at 14–23.

This Court has repeatedly held that Commerce has inherent authority to define the scope of an antidumping duty investiga-

tion. *NTN Bearing Corp. of America v. United States,* 14 CIT 623, 627, 747 F.Supp. 726, 731 (1990) (and cases cited therein). To determine whether a particular class or kind of foreign merchandise falls within the scope of an investigation, Commerce examines the description of the merchandise contained in the petition. *See Mitsubishi Elec. Corp. v. United States,* 12 CIT 1025, 1027, 700 F.Supp. 538, 541 (1988), *aff'd,* 898 F.2d 1577 (Fed.Cir.1990). "The determination as to whether a product is covered by an antidumping investigation is one which the ITA must make with ample deference to the intent of the petition." *Torrington Co. v. United States,* 16 CIT 99, 105, 786 F.Supp. 1021, 1026 (1992) (citation omitted), *dismissed,* 16 CIT 861, 802 F.Supp. 453 (1992). Although Commerce has the authority to clarify the scope of an antidumping duty determination, Commerce may not alter the scope of a preexisting order "in a way contrary to its terms." *Smith Corona Corp. v. United States,* 915 F.2d 683, 686 (Fed.Cir.1990).

The petition in this case expressly provides that:

> The merchandise covered by this petition consists of all antifriction bearings and *all parts thereof* both finished and unfinished, with the exception of tapered roller bearings. Included within the scope of this petition are ball bearings, cylindrical roller bearings, spherical roller bearings, spherical plain bearings, needle roller bearings, thrust bearings, tappet bearings, and all mounted bearings such as set screw housed units, bushings, pillow block units, flange, cartridge and take-up units and parts including balls, rollers, cages or retainers, cups, shields and seals.

*Public Document No. 9* at 59 (emphasis added). The petition goes on to specifically include in its coverage:

> the complete bearing assembly (inner and outer rings or races, balls or rollers and separator in sets), *outer rings or races alone,* inner rings alone or assembled together with balls or rollers and separator, balls or rollers alone and all parts of bearings whether finished or unfinished, single-row and multiple-row bearings of various angles and lengths, thrust bearings, tappet

bearings, bushings and all mounted bearings.

*Public Document No. 9* at 79–80 (emphasis added).

In addition, Sundstrand itself concedes that part number 742973 is and functions as, at least in part, an outer race of a cylindrical roller bearing. *Plaintiff's Brief* at 2–4.

Further, Commerce did not intend to distinguish between AFBs based upon such criteria as quality, precision, design features, end-application or enhanced capabilities. In fact, Commerce refused to create exclusions based upon such criteria, recognizing that any such exclusion would be unreasonable due to the "enormous variety of specialized final applications." *Scope Appendix,* 54 Fed. Reg. at 19,011–12.

Commerce found that Sundstrand's arguments fail to distinguish between part number 742973 and the end product into which it is incorporated. These arguments address only the end product, an aircraft component. Commerce has distinguished between AFBs covered by the order and AFBs that are incorporated into textile machinery components prior to importation and then imported as a component of such merchandise. Those AFBs which are ultimately utilized in textile machinery are clearly covered by the investigations. *Scope Appendix,* 54 Fed.Reg. at 19,017. In contrast, part 742973 is imported as an AFB part, the outer race of a cylindrical bearing that serves the function of reducing friction.

This Court finds that such a distinction is reasonable. Upon consideration of the record, the contentions of the parties and the deference this Court must grant Commerce's scope determination, the Court finds that Commerce's scope determination as to Sundstrand part number 742973 was in accordance with law and supported by substantial evidence. This Court therefore affirms Commerce on this issue.

### 2. *Application of the Roller Chain Principle*

■ Alternatively, Sundstrand maintains that even if the part involved herein falls within the scope of the order, it should be excluded from the scope of the countervailing order by virtue of the "Roller Chain" principle. *See Roller Chain, Other Than Bicycle, From Japan; Final Results of Administrative Review of Antidumping Finding,* 48 Fed.Reg. 51,801, 51,804 (Nov. 14, 1983). Plaintiff asserts that, as merchandise imported by a manufacturer from a related party and then incorporated into a finished product that is not covered by the order, the merchandise at issue should be excluded from the scope of the order because it makes up less than one percent of the finished product. Accordingly, plaintiff argues that, as countervailing duties are only to be assessed on the "class or kind" of merchandise receiving the subsidy, the "Roller Chain" rule operates to exclude the merchandise at issue from the "class or kind." For support, Sundstrand cites the final results of administrative reviews where Commerce states it would not assess antidumping duties against imports of merchandise which qualify under the "Roller Chain" principle.[1] *Plaintiff's Brief* at 17–22.

Defendant maintains that a scope ruling involves a determination as to whether a product is within the "class or kind of merchandise" covered by an order. If an item is not of the same "class or kind of merchandise" as the merchandise covered by an order, the item cannot be subject to duties pursuant to that order. 19 U.S.C. § 1677j (1988). The "Roller Chain" principle, by contrast, does not operate to permanently remove merchandise from the scope of an order. Defendant argues Commerce properly held that a "Roller Chain" determination would be inappropriate in the context of a scope determination because the "Roller Chain" rule operates with respect to specific transactions during a specific review period. Additionally, Commerce suggests that the "Roller Chain" principle applies only in antidumping duty situations and not, as here, in

---

**1.** *E.g., Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. 28,360, 28,377 (June 24, 1992).

a countervailing duty proceeding. *Defendant's Brief* at 23–29.

This Court finds that the "Roller Chain" principle does not apply in this case. The product in question as imported was within the scope of the order on AFBs and parts thereof. *See* discussion *supra.* Although pursuant to the "Roller Chain" principle merchandise covered by an order is not subject to duties if it represents an insignificant amount of the value of the finished product sold to the first unrelated purchaser in the United States, Commerce cannot know at the time of entry whether the "Roller Chain" principle will operate to exclude any particular entry from the scope of the order. Thus, Commerce cannot apply the "Roller Chain" principle in such a way as to limit the collection of duties.

Commerce aptly cites *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. at 28,378:

> ... [Commerce has] no way of knowing at the time of entry whether the "Roller Chain" principle will operate to exclude any particular entry from the scope of the order. We cannot, therefore, accept any proposal which would limit the collection of antidumping duty deposits on merchandise which may ultimately be subject to the order.

This Court agrees with defendant's contention that a "Roller Chain" analysis is inappropriate in the context of a scope proceeding because that principle operates only with respect to specific transactions during a specific review period. Under these circumstances, Commerce's determination that a "Roller Chain" analysis is more properly addressed within the context of an administrative review is reasonable and in accordance with law. Accordingly, Commerce is affirmed as to this issue.

3. *Failure to Hold a Hearing*

Sundstrand maintains Commerce's failure to hold a hearing at which Sundstrand could have presented a sample of the merchandise and displayed how it performs functions unrelated to the reduction of friction has resulted in a determination which is unsupported by substantial evidence and not in accordance with law. As it had requested a hearing prior to the final determination, Sundstrand contends that 19 U.S.C. § 1677c(a)(1) (1988) requires Commerce to hold a hearing in a scope proceeding. Accordingly, plaintiff requests a remand ordering Commerce to hold a full hearing on this scope determination. *Plaintiff's Brief* at 22.

Commerce refutes plaintiff's position, pointing out that Commerce has established notice and comment procedures to afford parties an opportunity to participate meaningfully in a scope proceeding. *See* 19 C.F.R. § 355.29(d); *Defendant's Brief* at 29–30.

19 U.S.C. § 1677c(a)(1) reads as follows:

**(1) In general**

Except as provided in paragraph (2), the administering authority and the Commission shall each hold a hearing in the course of an investigation upon the request of any party to the investigation before making a final determination under section 1671d or 1673d of this title.

This provision requires a hearing before a final determination in an investigation either pursuant to 19 U.S.C. § 1671d (*i.e.,* countervailing duty final determinations) or pursuant to 19 U.S.C. § 1673d (*i.e.,* antidumping duty final determinations). Paragraph (2) sets out an exception to paragraph (1) regarding special circumstances which are not relevant here. Therefore, this Court finds that 19 U.S.C. § 1677c(a)(1) does not require Commerce to hold a hearing in a scope proceeding.

In light of the above, this Court finds that Sundstrand's contention that a hearing is required to be held by Commerce in a scope proceeding has no merit whatsoever. Commerce's notice and comment procedures provided Sundstrand with ample opportunity to submit whatever information it possessed in support of its request for a scope ruling. Accordingly, this Court affirms Commerce as to this issue.

*Conclusion*

For the foregoing reasons plaintiff's motion is denied and Commerce's scope determination is affirmed in all respects. This action is dismissed.

### JUDGMENT

This case having been duly submitted for a decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that plaintiff's motion is denied in all respects and that Commerce's determination is affirmed in all respects; and it is further

**ORDERED** that this case is hereby dismissed.