The TORRINGTON COMPANY, Plaintiff,

v.

UNITED STATES, Defendant,

Dana Corporation, Defendant–Intervenor.

Slip Op. 98–8.
Court No. 96–08–01909.

United States Court of
International Trade.

Jan. 29, 1998.

Stewart and Stewart (Terence P. Stewart, Geert De Prest and James R. Cannon, Jr.), Washington, DC, for Plaintiff.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Cynthia B. Schultz); of counsel: Mark A. Barnett, Attorney–Advisor, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for Defendant.

Barnes, Richardson & Colburn (Robert E. Burke, Kazumune V. Kano, and David G. Forgue), Chicago, IL, for Defendant–Intervenor.

## OPINION

TSOUCALAS, Senior Judge:

Plaintiff, the Torrington Company ("Torrington"), brings this motion pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record. Torrington challenges certain final scope determinations [1] of the United States Department of Commerce, International Trade Administration ("Commerce"), excluding center bracket assemblies ("CBAs") imported from Japan by Dana Corporation ("Dana") and cushion suspension units ("CSUs") imported from Japan and Singapore by Rockwell International Corporation ("Rockwell") from the scope of the antidumping duty orders on ball bearings, cylindrical roller bearings, and spherical plain bearings from Japan and Singapore, entitled *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan*, 54 Fed.Reg. 20,904 (1989), and *Antidumping Duty Order of Sales at Less Than Fair Value: Ball Bearings and Parts Thereof From Singapore*, 54 Fed.Reg. 20,907 (1989) (collectively, "Order").

### Background

On March 31, 1988, Torrington filed an antidumping duty petition on behalf of the United States domestic industry producing antifriction bearings ("AFBs") on all AFBs (other than tapered roller bearings) including

---

1. Commerce's determination with regard to Dana (*"Dana Determination"*) is contained in an unpublished letter to interested parties with an attached memorandum from Holly A. Kuga to Joseph Spetrini, dated June 26, 1996. *See Dana Determination*, P.R. Doc. No. 12, Pl.'s App., Ex. 2. A brief summary of the Dana Determination was published in the Federal Register on August 1, 1996. *See Notice of Scope Rulings*, 61 Fed. Reg. 40,194 (1996). Commerce's determination with regard to Rockwell (*"Rockwell Determination"*) is contained in an unpublished letter to interested parties with an attached memorandum from Holly A. Kuga to Jeffrey P. Bialos, dated February 10, 1997. *See Rockwell Determination*, P.R. Doc. No. 30, Pl.'s App., Ex. 1. A brief summary of the Rockwell Determination was published in the Federal Register on June 4, 1997. *See Notice of Scope Rulings*, 62 Fed.Reg. 30,569 (1997).

housed bearing units, regardless of use. On May 23, 1988, Commerce prepared a memorandum regarding the scope of the antidumping and countervailing duty investigations of AFBs. In its memorandum, and then again during a meeting with Torrington, Commerce requested, *inter alia*, that Torrington specifically identify the products entering under the basket provision for miscellaneous automotive parts (TSUS item 692.3295) [2] that it wants included in the scope of these investigations and state whether it produces each product. On May 26, 1988, Torrington responded to Commerce's request by asserting that the petition was intended to cover *all* antifriction bearings, other than tapered roller bearings, and parts, including so-called application bearings and bearing units (*e.g.,* bearings which incorporate some additional feature to permit ease of assembly, mounting, etc.).

On June 13, 1988, Commerce issued a Product Coverage Memorandum ("*PCM*") for the antidumping and countervailing duty investigations at issue, in which it stated the following:

> Wheel hub units enter under the TSUSA category for miscellaneous automotive parts and were specifically named in the petition. No other items entering under this category were named in the petition. Accordingly, wheel hub units currently are the only item entering under the TSUSA category for miscellaneous automotive parts which are included in the scope of these investigations. All other items entering under the miscellaneous automotive parts TSUSA category will not be subject to these investigations, absent convincing evidence provided by the petitioner that any such item should be included.

*PCM* at 2, Pl.'s App., Ex. 3. Torrington did not submit any evidence regarding CBAs and CSUs.

On May 15, 1989, Commerce published the Order at issue covering ball bearings, cylindrical roller bearings, and spherical plain bearings from Japan and Singapore. The Order indicated its scope as follows:

> Wheel hub units which employ [balls or cylindrical rollers] as the rolling element entering under TSUSA item 692.3295 [miscellaneous automotive parts] are subject to investigation; *all other products entering under this TSUSA item are not subject to investigation.*

*Order,* 54 Fed.Reg. at 20,905 & 54 Fed.Reg. at 20,907 (emphasis added). No party challenged any aspect of the Order's scope language relating to the exclusion of miscellaneous automotive parts covered under TSUS 692.3295 other than wheel hub units.

On separate occasions, both Dana and Rockwell requested that Commerce issue a scope ruling excluding their automotive parts, CBAs and CSUs, from the scope of the Order. *See Dana Scope Ruling Request for CBAs,* P.R. Doc. No. 2, Pl.'s App., Ex. 3 (Nov. 17, 1994) ("*Dana Scope Request*"); *Rockwell Scope Ruling Request for CSUs,* P.R. Doc. No. 9, Pl.'s App., Ex. 4 (Nov. 9, 1995) ("*Rockwell Scope Request*"). Commerce determined that the CBAs imported by Dana and the CSUs imported by Rockwell are outside the scope of the Order. *See Notice of Scope Rulings,* 62 Fed.Reg. 30,569 & 61 Fed.Reg. 40,194.

On August 7, 1996, Torrington filed its summons challenging the Dana determination and the present action ensued. On March 5, 1997, Torrington's case was consolidated with Torrington's challenge of the Rockwell Determination. Rockwell is not a party to this action. Oral argument was held at the Court on December 16, 1997.

### Discussion

The Court has jurisdiction over this matter under 19 U.S.C. § 1516a(a)(2)(B)(vi)(1994) and 28 U.S.C. § 1581(c)(1994).

■ In an action for judgment upon the agency record contesting Commerce's exclusion of certain products from the scope of an antidumping duty order, the Court must up-

---

2. The importation of the products that are the subject of this litigation occurred prior to the adoption of the Harmonized Tariff Schedule in 1989. In this decision, therefore, the Court will refer to the TSUS system of classification under which CSUs and CBAs were classified under TSUS item 692.3295.

hold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

In this action, Torrington asks that this Court reverse Commerce's determination that CBAs, the subject of Dana's Scope Request, and CSUs, the subject of Rockwell's Scope Request, are excluded from the scope of the Order. The only issue presented to this Court is whether Commerce's scope determination excluding CBAs and CSUs from the scope of the Order is supported by substantial evidence on the record and is in accordance with law.

### 1. Timeliness of Torrington's Attempt to Submit Evidence That CBAs and CSUs are AFBs of the Type Covered by the Order

■ Torrington wishes to submit evidence that CBAs and CSUs are bearings that should be covered by the scope of the Order, despite their classification as auto parts, and despite the Order's express language that wheel hub units are the only automotive parts in the Order's scope. Oral Argument, James R. Cannon, Jr. (Dec. 16, 1997); *Torrington Opposition to Dana Scope Request,* P.R. Doc. No. 4, at 1–3, Pl.'s App., Ex. 5 (Jan. 26, 1995). Torrington claims that the PCM supports its position that it may now argue that the products in question are bearings of the type covered by the Order. Specifically, Torrington refers to the following language in the PCM: "All other items [other than wheel hub units] entering under the

miscellaneous automotive parts TSUSA category will not be subject to these investigations, *absent convincing evidence provided by the petitioner that any such item should be included." PCM* at 2, Pl.'s App., Ex. 3 (emphasis added). Torrington argues that the phrase "absent convincing evidence" provides an open-ended invitation for petitioner to suggest, at any time during the Order's administration, products in the automotive classification which should be included in the Order's scope. This is a gross mischaracterization of the opportunity afforded by the PCM and by the law.

Torrington's attempt to introduce evidence at this time that CBAs and CSUs are bearings covered by the Order is time-barred. As a procedural matter, the PCM was part of Commerce's preliminary and final determinations and, therefore, should have been challenged within thirty days of the publication of the Order. *See* 19 U.S.C. § 1516a(a)(2)(A) (1988); *Toshiba Corp. v. United States,* 15 CIT 408, 413, 770 F.Supp. 660, 664 (1991). Torrington misunderstood the law on this matter and, consequently, the opportunity granted by the PCM.

Even if Torrington could not have raised evidence at the time of the Order's publication specifically regarding CBAs and CSUs, it still had the opportunity to challenge the language in the Order that excluded all but wheel hub units in the automotive parts category for investigation. Torrington, however, chose not to do so. The Court will therefore analyze Torrington's claim without considering any additional evidence Torrington wishes to submit regarding CBAs and CSUs.

### 2. Scope of the Order

■ A scope determination is a clarification of what the scope of the order was at the time the order was issued. As this Court has recognized several times in the past, Commerce retains broad discretion to define the scope of an antidumping investigation. *See, e.g., SKF USA, Inc. v. United States,* 15 CIT 152, 156, 762 F.Supp. 344, 348 (1991), *aff'd,* 972 F.2d 1355, 1992 WL 146116 (Fed. Cir.1992); *Smith–Corona Group v. United States,* 713 F.2d 1568, 1582 (Fed.Cir.1983); *Mitsubishi Elec. Corp. v. United States,* 12

CIT 1025, 1042, 700 F.Supp. 538, 552 (1988), *aff'd*, 898 F.2d 1577 (Fed.Cir.1990). However, Commerce's discretion must be exercised reasonably and must be supported by substantial evidence in the administrative record. *See SKF USA Inc.*, 15 CIT at 156, 762 F.Supp. at 348.

In determining whether a particular product is within the scope of an antidumping duty order, Commerce must first consider whether the underlying petition covers the product. *See* 19 C.F.R. § 353.29(i) (1994); *Koyo Seiko Co. v. United States*, 21 CIT ——,——, 955 F.Supp. 1532, 1537 (1997); *Torrington Co. v. United States*, 16 CIT 99, 104, 786 F.Supp. 1021, 1025 (1992). If the petition is ambiguous, Commerce must then examine its preliminary and final determinations of less than fair value ("LTFV"), the International Trade Commission's ("ITC") determination of material injury, Commerce's previous notices of initiation of the LTFV investigation, and any available ITC publications. 19 C.F.R. § 353.29(i); *see also Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed.Cir.1990) (to determine an order's scope, the order must be examined with the help of the petition and legal conclusions of administrative investigations); *Koyo Seiko*, 21 CIT at ——, 955 F.Supp. at 1537; *Koyo Seiko Co. v. United States*, 17 CIT 1076, 1079, 834 F.Supp. 1401, 1403–04 (1993), *aff'd*, 31 F.3d 1177, 1994 WL 374776 (Fed. Cir.1994); *Nitta Indus. Corp. v. United States*, 16 CIT 244, 246 (1992). If the scope of the particular product is still unclear, Commerce is to look to other criteria, including an analysis of the product's character under the factors enumerated in *Diversified Prods. Corp. v. United States*, 6 CIT 155, 572 F.Supp. 883 (1983). *See* 19 C.F.R. § 353.29(i); *see also Torrington*, 16 CIT at 104, 786 F.Supp. at 1025. The application of the *Diversified Products* criteria is not required for the resolution of ambiguity but is a legitimate exercise of Commerce's discretion and authority. *American NTN Bearing Mfg. Corp. v. United States*, 14 CIT 320, 331, 739 F.Supp. 1555, 1565 (1990).

■ The question here is whether CBAs and CSUs were properly excluded from the investigations. CBAs are automotive components attached to the chassis of a vehicle that support the driveshaft. CSUs are also automotive components, very much like Dana's CBAs, which reduce driveline force reactions in universal joints. *Rockwell Determination*, P.R. Doc. No. 30, at 2, Pl.'s App., Ex. 1. Petitioner conceded at oral argument that during the LTFV investigations and at present, Dana has been importing CBAs and Rockwell has been importing CSUs under the tariff classification for miscellaneous automotive parts.[3] Oral Argument, James R. Cannon, Jr., (Dec. 16, 1997); *see also Rockwell Determination*, P.R. Doc. No. 30, at 2, Pl.'s App., Ex. 1.

■ In this case, pursuant to the regulations and case law, Commerce examined Torrington's petition to determine whether the CBAs and CSUs fall within the scope of the Order. In a scope investigation where Commerce examines the description of the merchandise contained in the petition, Commerce must give ample deference to the intent of the petitioner. *See Koyo Seiko*, 21 CIT at ——, 955 F.Supp. at 1537; *Koyo Seiko*, 17 CIT at 1078, 834 F.Supp. at 1403. In its petition, Torrington requested that the Order encompass all AFBs, other than tapered roller bearings, including housed bearing units. Commerce determined that Torrington's petition was not sufficiently clear to be used as a basis for determining the scope of the Order because the petition can be interpreted to include all products containing bearings entering under the category for miscellaneous auto parts. *See PCM* at 1, Pl.'s App., Ex. 3.

Because Commerce determined that the petition was ambiguous, Commerce relied on other evidence, beginning with relevant ITC notices and publications. In its investigations, the ITC defined the merchandise subject to investigation as follows:

> For purposes of these investigations, ball bearings [cylindrical bearings, etc.] and parts thereof include the following articles, whether mounted or unmounted:

---

3. The parties do not dispute the record evidence indicating that CBAs have been imported since

1981 and CSUs have been imported since 1982. *See Customs Ruling Letter* 801228 (Sept. 8, 1981).

... wheel hub units which employ balls as the rolling element entering under TSUSA item 692.3295; all other items entering under this item are not subject to investigation.

*Antifriction Bearings (Other than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom (Final Determinations )*, USITC Publication 2185 (1989) (*"Final Determinations "*). In addition, Commerce referred to its PCM, which expressly indicated that wheel hub units are the only product entering under the TSUS category for automotive parts covered by the investigation. *See PCM* at 2, Pl.'s App., Ex. 3.

The Court agrees that Torrington's petition is ambiguous with respect to products that are imported as automotive parts because it fails to explicitly refer to CBAs or CSUs, preexisting products which were being imported under the same tariff classification years before Torrington even submitted the petition. *See Koyo Seiko*, 21 CIT at ——, 955 F.Supp. at 1538 (failure to refer explicitly to certain products renders petition ambiguous). Torrington's petition refers only to wheel hub units in the relevant classification category. The petition, therefore, is too broad to serve as a basis for the scope of an antidumping duty order. Consequently, Commerce properly decided to refer to other pieces of additional documentary evidence in the record. The PCM, ITC publications and the LTFV determinations clearly demonstrate that CBAs and CSUs were appropriately excluded from the scope of the Order.

Most damaging to Torrington's case is the express language of the Order itself. The Order is clear that, of all products entering under TSUS classification 692.3295, only

wheel hub units are included in the scope of the Order. *Order,* 54 Fed.Reg. at 20,905 & 54 Fed.Reg. at 20,907.[4]

Torrington asserts that Commerce should have resorted to the *Diversified Products* analysis. The law, however, mandates no such requirement in this case. Although the *Diversified Products* criteria may be used to clarify the scope of an antidumping duty order when the order and its accompanying administrative record are ambiguous, *see, e.g., American NTN*, 14 CIT at 331, 739 F.Supp. at 1565, Commerce need not apply the *Diversified Products* criteria to a preexisting product. *See SKF USA*, 15 CIT at 157, 762 F.Supp. at 349. Further, there is no ambiguity in the Order. The Order's language stating that "all other products ... [except for wheel hub units] are not subject to investigation" means just that: if an article is in the automotive parts category and it is not a wheel hub unit, it is not covered. Thus, Commerce was not required to use the *Diversified Products* analysis to reach its decision.

Torrington argues that Commerce's use of tariff classifications in its scope ruling unlawfully cedes authority to Customs. This argument has no merit. Although Commerce is not required to conform its scope determinations to Customs' classification categories, in this case, Commerce chose to use the tariff classification for automotive parts as the only means of defining the scope of certain merchandise, without any disclaiming language. *See Koyo Seiko*, 21 CIT at ——, 955 F.Supp. at 1541–42. If Commerce did not intend the tariff classification to be controlling, Commerce could have easily indicated any intent to use the TSUS numbers purely for reference purposes by including disclaiming language. *Id.*

4. The Court notes that Torrington does not argue that CBAs and CSUs are wheel hub units. Wheel hub units consist of ball bearings that have been sealed into a cast or forged flanged housing with bolt holes in which the flanged housing acts as the outer race of the bearing. Like other housed bearings, if the bearing in a wheel hub unit wears out, the entire unit must be replaced. The function of a wheel hub unit is to attach a wheel to a vehicle, to link the wheel to the steering mechanism and to aid the braking process. *Final Determinations*, USITC Publication 2185, at 20–21. By contrast, the functions of CBAs and CSUs, which consist of a support bracket, a rubber cushion, a grease retainer, a ball bearing and a shield, serve to support the driveshaft and to minimize coupling forces. *See Dana Determination*, P.R. Doc. No. 12, at 2, Pl.'s App., Ex. 2.; *Rockwell Determination*, P.R. Doc. No. 30, at 2, Pl.'s App., Ex. 1. Therefore, CBAs and CSUs are distinct from wheel hub units in physical characteristics as well as function.

Finally, Torrington's request to include products where the Order demands exclusion is in direct conflict with the terms of the Order and is not permissible. Although Commerce has the authority to clarify the scope of its antidumping duty orders, Commerce "may not expand the scope of such orders beyond the merchandise encompassed by the final less that fair value determinations." *Ericsson GE Mobile Communications Inc. v. United States*, 21 CIT ——, ——, 955 F.Supp. 1510, 1520 (1997); *Smith Corona*, 915 F.2d at 686; *Mitsubishi Elec. Corp. v. United States*, 16 CIT 730, 733–734, 802 F.Supp. 455, 458 (1992).

### Conclusion

Upon review of the administrative record, the Court finds Commerce's determination excluding CBAs and CSUs from the scope of the Order is the only reasonable interpretation of the Order. Therefore, the Court holds that Commerce's determination is supported by substantial evidence and is in accordance with law.

### JUDGMENT